UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-62016-CIV-DIMITROULEAS

PAUL MARCUS,

    Plaintiff,

vs.

MURRAY LIEBOWITZ,
M.S.L. PROPERTY MANAGEMENT, INC.,
a Florida corporation,
HARBOR INN OF CS ASSOCIATES, LTD.,
a Florida limited partnership, and
PARK PLAZA ASSOCIATES, LTD.
a Florida limited partnership,
LIEBOWITZ FAMILY LIMITED PARTNERSHIP,
a Florida limited partnership,

    Defendants.
_____/



## VERIFIED AMENDED COMPLAINT

Plaintiff, Paul Marcus ("Marcus"), files this Amended Complaint, and states:

### THE PARTIES

1. Marcus is a citizen of the State of New Hampshire. He also maintains a residence in New Jersey. Marcus brings this action individually and as a derivative action on behalf of the Florida partnerships described below.

2. Defendant, Murray Liebowitz ("Liebowitz"), is an individual residing in Boca Raton, Florida. He also resides in South Egremont, Massachusetts.

3. Defendant, Harbor Inn of CS Associates, Ltd. (hereinafter "Harbor Inn"), is a Florida limited partnership with its headquarters in Fort Lauderdale, Florida. Harbor Inn owns a residential apartment building in Coral Springs, Florida



4.     Defendant, Park Plaza Associates, Ltd. (hereinafter "Park Plaza"), is a Florida limited partnership with its headquarters in Fort Lauderdale, Florida.  Collectively herein, Harbor Inn and Park Plaza are referred to herein as the "Partnerships."  Park Plaza owns a residential apartment building in North Lauderdale, Florida..

5.     Defendant, M.S.L. Property Management, Inc. (hereinafter "M.L. Management"), is a Florida corporation with headquarters in Fort Lauderdale, Florida.  At all times material to this complaint, M.L. Management was the general partner of and the property manager for the Partnerships, and Liebowitz was its president.

6.     Marcus is presently and at the time of all the transactions complained about was a limited partner of the Partnerships.

7.     Liebowitz Family Limited Partnership is, on information and belief, a Florida limited partnership.

## JURISDICTION AND VENUE

8.     The Court has original jurisdiction of this Complaint pursuant to 28 U.S.C. Section 1332(a)(1) in that there exists diversity of citizenship between the plaintiff and defendants as citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The fact that the plaintiff, a citizen of New Hampshire, is suing Florida defendants on behalf of Florida limited partnerships, in the nature of a derivative action, does not affect diversity, because the Partnerships are aligned with and controlled by the defendant general partner, M.L. Management, and its president, Liebowitz.  This Court has supplemental jurisdiction over any state law claims and for declaratory relief pursuant to 28 U.S.C. Section 1332(a)(1), 28 U.S.C. Section 1367(a), and 28 U.S.C. Section 2201.

9.     This action was transferred to this district from the United States District Court for the District of New Jersey.  Venue is proper in the United States District Court for the

Southern District of Florida because all the defendants reside in Florida and in this district, and a substantial part of the events and transactions giving rise to the claims occurred and continue to occur in this district. Venue is proper here under 28 U.S.C. Section 1391.

### STATEMENT IN SUPPORT OF DERIVATIVE ACTION (FLA. STAT. § 620.165 AND FEDERAL RULE 23.1)

10. This action is not a collusive one to confer jurisdiction on this Court which it would not otherwise have. As to the claims brought herein as a derivative action, Marcus has not formally requested that M.L. Management, as general partner, pursue those actions, because such a request would be futile. Marcus seeks relief on behalf of the Partnerships against M.L. Management and its principal, Liebowitz. M.L. Management and Liebowitz have made clear that they are not willing to provide Marcus the relief he seeks, and it is obviously futile to ask the general partner to pursue an action against itself. Marcus has a minority ownership in the Partnerships, and therefore cannot successfully vote to compel the Partnerships to undertake actions to which the general partner, M.L. Management, objects. Further, the defendants have previously represented to the Court that the present action should be brought as a derivative action. Motion to Dismiss at 4, ¶ 10. Marcus will fairly and adequately represent the other limited partners similarly situated in enforcing any rights of the Partnerships.

### CONDITIONS PRECEDENT

11. All conditions precedent to bringing this action have been performed or have occurred.

### BACKGROUND

#### Harbor Inn

12. Harbor Inn was formed pursuant to Florida law on March 29, 1993.

13.     The initial general partner of Harbor Inn was M.L. Management, then known as M.L. Property Management, Inc. On or about March 31, 1993, one-half (1/2) of the general partner interest of Harbor Inn was transferred to CDS Industries, Inc., a Florida corporation owned and controlled by Marcus.

14.     The initial limited partners of Harbor Inn were Murray Liebowitz and his son, Sheldon Liebowitz. Effective March 31, 1993, the limited partners were allocated partnership interests based upon the parties' respective investments, namely 44.55% to Marcus (based upon his investment of $900,000) and 4.95% each to Murray and Sheldon Liebowitz.

15.     On or about March 31, 1993, Harbor Inn entered into a Property Management Agreement with M.L. Management.

16.     Marcus transferred 4.95% of his limited partnership interest in Harbor Inn to his son, Dean J. Marcus, with the required and written agreement of all general and limited partners of Harbor Inn. Limited partner Adrienne Van Zon transferred his entire limited partnership interest in the entities to Erasin, Inc., with the required approval of all partners.

**Park Plaza**

17.     Park Plaza was formed pursuant to Florida law on July 20, 1993.

18.     The initial general partner of Park Plaza was M.L. Management and the initial limited partners were Murray Liebowitz and Sheldon Liebowitz. On or about August 11, 1993, the limited partnership interests of Park Plaza were allocated based upon the parties' respective investments, namely 40% to Marcus, based upon his investment of $880,000, and 9% each to Murray and Sheldon Liebowitz.

19.     On or about August 11, 1993, Park Plaza entered into a Property Management Agreement with M.L. Management.

## Management Agreements

20.     Liebowitz induced Marcus to invest in these entities by his promise as set forth in the agreements that his company, M.L. Management, would continue to be owned, controlled and operated substantially by Liebowitz and the partnerships would be managed by Liebowitz who would be in primary control and supervision thereof. Liebowitz also induced Marcus to invest by promising high income from the rentals of the property and the promise of substantial capital gains when the properties were sold in five to ten years.

21.     Harbor Inn and Park Plaza have substantially the same ownership and documentation relating to the formation of the entities involved, and contracts and commitments made by each, except the ownership percentages differ somewhat. Most contractual issues relative to this matter involving one partnership apply to the other as well, although the management fee structure varies between the contracts.

22.     In significant part, the management agreement of Harbor Inn provides as follows:

> 1.2 <u>Owner's Representative</u>. The Owner shall designate two (2) persons to serve as the "Owner's Representatives" in all dealings with the Management Company hereunder. Whenever the approval or consent or other actions of the Owner is called for hereunder, such approval, consent or action shall be binding on the Owner, if it is set forth in a written instrument executed by the Owner's Representatives. Initially, the exclusive Owner's Representatives shall be Robert Krim and Lawrence E. Bathgate, II, Esq.

The Park Plaza management agreement has a similar provision.

23.     In addition, Liebowitz committed to Marcus by letter of March 15, 1993 ("Letter Agreement") that:

> [Regarding the Harbor Inn] Management Contract in all matters requiring "Owner's" approval, M.L. Property Management, Inc. will consider Paul Marcus personally the "Owner." This agreement is not transferable to any other person or entity.

5

Liebowitz thereby induced Marcus to invest in the Partnerships by promising that Marcus would share in all management decisions with Liebowitz.

24. The Property Management Agreement of Harbor Inn provides in relevant part:

-- for the renting of apartments to take place on form leases approved by the Owner (Section 1.3),

-- for commission agreements with brokers only with written authorization of the Owner (Section 1.3),

-- to engage in advertising other than newspapers only with approval of the Owner (Section 1.3),

-- to provide advance notice of expenditures to allow the Owner to approve or override same (Section 2.1),

-- to provide advance notice of salaries and benefits of employees of Owner in order to allow the Owner to approve or override same (Section 2.2),

-- for all service contracts only with Owner's approval (Section 2.3),

-- to supervise construction and capital expenditures at the property at Owner's, request, and to provide multiple bids and only perform work when noticed and approved (Section 2.4), and

-- to secure adequate insurance coverages (Section 2.5).

M.L. Management is prohibited from delegating any of its obligations or duties under the management agreement (Section 3.4). The management agreement contains no stated term, and is therefore an agreement at will (Section 3.3). The Park Plaza management agreement has substantially similar provisions, although it does have a termination date of December 31, 2030.

### Private Placement Memoranda

25. The Private Placement Memorandum for Harbor Inn provides that:

> The General Partners are accountable to the Partnership as a fiduciary and consequently must exercise good faith and integrity in handling the Partnership's affairs. This is in addition to the duties and obligations of the General Partners set forth in the Partnership Agreement.

The Private Placement Memorandum for Park Plaza has an identical provision.

### Limited Partnership Agreements

26. The Amended and Restated Agreement of Limited Partnership of Park Plaza Associates, dated August 11, 1993, provides in relevant part:

> 1.10 <u>Voting of the Partners</u>. Except as otherwise expressly provided herein to the contrary any vote, approval, consent, authorization or other action required to be taken or made by the (i) General Partner shall be made by a vote of the General Partner, and (ii) Limited Partners shall be made by a vote of the Limited Partners owning at least two-thirds (2/3) of the Interests in the Partnership.
>
> <u>Section 3. Control and Management</u>.
> 3.1 <u>General</u>. The General Partner shall have full, exclusive and complete discretion in the management and control of the Partnership for accomplishing the purposes set forth in Section 1.3 ....
>
> 3.2 <u>Powers of General Partner</u>. Subject to any limitation expressly set forth in this Agreement, the General Partner shall perform or cause to be performed, ... all management and operational functions relating to the property.... Without limiting the generality of the foregoing, (subject to paragraph 3.3) the General Partner ... is expressly authorized on behalf of the Partnership to: ... (b) borrow money on behalf of the Partnership on a secured or unsecured basis, or refinance or modify any loan to the Partnership which affects the assets of the Partnership...
> (1) negotiate, execute, deliver and perform any and all mortgages, financings, notes, insurance certificates and agreements (including the proposed Intercontinental Bank Mortgage) as defined in the Memorandum and any and all amendments, modifications, addendums, renewals, etc., related thereto and necessary or consistent in connection therewith.
>
> 3.3 <u>Limitations on Power of the General Partner</u>. Notwithstanding the generality of the foregoing, the General Partner shall not be empowered without the consent of the Limited Partners owning two-thirds (2/3rds) of the Interest in the Partnership ... to ... (h) utilize the proceeds to be received by the Partnership pursuant to Section 5.1 for purposes other than as set forth under the caption

'Sources and ‚Uses of Proceeds' in the Memorandum; ... (j) admit additional or Substitute Limited Partners, except as provided in Sections 9 and 11 of this Agreement.

3.9 <u>Dealings with the General Partner and Affiliates</u>. Provided the General Partner shall have the Owner's written approval, the Partnership is authorized to enter into business agreements, contracts, and other transactions with the General Partner or any Affiliates of the General Partner ... and is authorized to pay fees, commissions or other consideration to the General Partner....

27. The Memorandum provided to the partners has a section entitled "Sources and Uses of Proceeds," which provides as follows:

> Below is a summary of the expected sources of funds and uses of funds required to close the sale of the units and the proposed Intercontinental Bank Mortgage.

The summary reflects estimates based on tentative closing adjustments. If the amounts change, the General Partner may be required to contribute more or less than the amount shown under "Sources." There also may be additional capital calls of the Limited Partners pursuant to the Partnership Agreement if the amounts allocated under "Other Costs" is exceeded.

28. In Section 3.2 of the Private Placement Memorandum for Park Plaza, it was stipulated and agreed that the General Partner:

> ... shall not be empowered without the consent of the Limited Partners owning at least two-thirds (2/3) of the units in the Partnership to (i) do any act in contravention of the Partnership Agreement, ...(v) utilize the proceeds to be received by the Partnership for purposes other than as set forth under the Sources and Uses of Proceeds in this Memorandum.

Under the Section "Plan of Financing," the following is reflected:

> At present the Project is proposed to be encumbered by an Intercontinental Bank mortgage as reflected in the PROPOSED INTERCONTINENTAL BANK MORTGAGE DATA attached hereto as Exhibit "C".
>
> The Partnership has applied for a $2,500,000.00 Mortgage Loan (the "Proposed Intercontinental Bank Mortgage") with Intercontinental Bank to finance a portion of the cost of acquiring the Project. The Partnership expects to enter into a first lien permanent mortgage with Intercontinental Bank or mortgage of similar in terms. (See the "PROPOSED INTERCONTINENTAL BANK MORTGAGE DATA"). The proposed Intercontinental Bank Mortgage is anticipated to be

8

payable as a 1 year ARM based on a 15 year amortization with a 3 year balloon with the entire principal balance payable in full on the last day of the thirty-sixty (36th) month following the Closing Date with an option to renew for three years with payment of one point. It is not expected that the Partnership will have available to it sufficient funds from operations to meet the balloon payment due on the proposed Intercontinental Bank at its maturity in three years. The General Partner anticipates selling the Project or refinancing the proposed Intercontinental Bank Mortgage when it comes due.

29. On or about February 20, 2002, and again on March 13, 2002, upon notice that Liebowitz and M.L. Management intended to refinance the Park Plaza property, Marcus notified defendants that he objected to any refinance transaction unless a current mortgage matured and was due and payable or to secure a more favorable rate, and only in those instances for the minimum amount required to refinance. Marcus advised the Park Plaza partnership and M.L. Management as its general partner of his objection to a refinance without the requisite consents of two-thirds of the interest holders. Marcus specifically objected to any refinance for more than the amount necessary to pay off the current mortgage.

## MISMANAGEMENT AND SELF-DEALING

30. On various occasions and at various times, Liebowitz and M.L. Management, on information and belief, have utilized the assets and contractors working for the Partnerships for their own personal benefit and to perform services outside the scope of work for the Partnerships but at the cost and expense of the Partnerships.

31. Liebowitz and M.L. Management have failed to secure required approvals and votes approving their actions on behalf of the Partnerships, including but not limited to, approvals of lease forms, commission agreements, advertising, various expenditures, salaries and benefits, service contracts, loans, and quotations for work to be performed, and have acted as managing contractor without submitting bids for approval, and have made capital expenditures without the required approvals.

32. Liebowitz and M.L. Management have failed to provide adequate insurance coverage and negligently expended funds of the Partnerships on insurance representation without securing such coverages.

33. Liebowitz and M.L. Management failed to advise and consult with the Owners' representatives, including Marcus, as required by the contractual commitments undertaken, the promises made to Marcus, and the Letter Agreement with Marcus.

34. During the year 2001, in violation of the applicable partnership documents and without notice to Marcus or approval by Harbor Inn, Park Plaza, or the partners, Liebowitz transferred all or part of his interest in each partnership to another entity called Liebowitz Family Limited Partnership. Liebowitz and M.L. Management caused and agreed to improper tax filings in connection with these transfers in order to further their personal interests.

35. On or about April 29, 2002, over Marcus' objections and without proper approval of the limited partners, Liebowitz and M.L. Management refinanced the Park Plaza property and increased its mortgage obligation by nearly $2.2 million.

36. As a part of the refinance transaction noted in the preceding paragraph, M.L. Management paid to a third party a mortgage placement fee of $85,000 and also took a mortgage placement fee of $85,000 itself. The mortgage closing statement improperly reported the transaction and omitted important disbursements. Liebowitz and M.L. Management have caused Park Plaza to hold more than $500,000 in escrow for no reason and without approval.

37. As a result of the refinance transaction and other transactions engaged in by Liebowitz and M.L. Management in connection with the partnerships, the capital accounts of the partners in these partnerships is increasingly negative, exposing the partners to excessive taxes upon any sale or transfer.

10

38. Liebowitz and M.L. Management have negligently managed the properties and failed to maintain the fair and reasonable return on investment for the partners to which they are entitled, in part by using reserves (more than $500,000 from past refinancings) to pay distributions, thereby giving the partners the false impression that the promised return on invested capital is being maintained when in fact the excessive borrowings have saddled the properties with excessive debt. Liebowitz and M.L. Management are obscuring the true financial picture of the Partnerships by the distribution of the partners' own capital as "distributions" and by providing unclear, misleading and contradictory monthly and quarterly statements.

39. Liebowitz violated his commitments to Marcus and, on information and belief, transferred to his son a substantial interest in M.L. Management as well as the day-to-day responsibilities for managing the Partnerships' properties.

40. More recently, over the past five quarters, Liebowitz and M.L. Management have caused the Partnerships to fail to make their usual quarterly distributions at all. To date, Liebowitz and M.L. Management have prevented the Partnerships from making close to $1.5 million in distributions to the limited partners, including Marcus, and instead have diverted those funds into a reserve. There is no legitimate business reason for diverting the distributions to a reserve fund. Liebowitz and M.L. Management took this action in blatant retaliation against Marcus for his objections to their various misdeeds and breaches of contract and trust, and for his initiation of this litigation.

41. Since the initiation of this litigation, Liebowitz and M.L. Management have been paying their own legal defense costs and fees from the funds of the Partnerships, in violation of the partnerships agreements and their fiduciary duties.

MIA2001 261834v1

Steel Hector & Davis LLP

42. Marcus has recently suggested to Liebowitz and M.L. Management that they refinance the properties, at a significantly lower interest rate and on more favorable terms. Such refinance would be beneficial to the Partnerships by lowering their financing costs, increasing cash flow, and increasing the value of the Partnerships to the limited partners. Liebowitz and M.L. Management have refused to pursue or even consider such refinancing, despite its being in the best interest of the Partnerships. Instead, Liebowitz and M.L. Management have attempted to prevent Marcus from even investigating the availability of favorable refinance options.

## FIRST COUNT

### (Breach of Fiduciary Duty)

43. Marcus repeats and incorporates herein the allegation of paragraphs 1 through 42.

44. Liebowitz and M.L. Management have violated their fiduciary duties to Marcus individually, and to the Partnerships and the other limited partners of the partnerships. Contrary to their fiduciary obligations, they have acted in their own personal interest.

45. As a direct and proximate result of the breaches of fiduciary duties, Marcus has been and continues to be damaged.

46. As a direct and proximate result of the breaches of fiduciary duties, the Partnerships have been and continues to be damaged.

WHEREFORE, Marcus seeks damages against Liebowitz and M.L. Management for damages, both individually and on behalf of the Partnerships, and for interests, costs, and attorneys' fees pursuant to Fla. Stat. § 620.166.

## SECOND COUNT

### (Breach of Contract: Damages and Declaratory Judgment)

47. Plaintiff repeats and incorporates herein the allegation of paragraphs 1 through 42.

48.     The actions of M.L. Management set forth above amount to material breaches of the partnership and management agreements of the Partnerships, as well as the Letter Agreement.

49.     As a result of the breaches, Marcus has been damaged.

50.     As a result of the breaches, the Partnerships have been damaged.

51.     The management agreement of M.L. Management with Harbor Inn is without duration, is violative of legal requirements and public policy and require the Court to declare it either terminated or terminable at will, or determine its intended length.

WHEREFORE, Marcus demands that the Court

A.      Adjudge and declare that the management agreements of Harbor Inn and Park Plaza with M.L. Management have been breached, are thereby rendered terminated and null and void, and that in any event are terminable at the will of the Partnerships without Murray or Sheldon Liebowitz or M.L. Management's participation in such decision because of their conflicts of interest;

B.      Award damages to Marcus both individually and on behalf of the Partnerships, as well as interest, costs and attorneys' fees pursuant to Fla. Stat. § 620.166, and grant such further relief as the Court deems appropriate.

## THIRD COUNT
### (Injunctive Relief)

52.     Marcus repeats and incorporates herein the allegation of paragraphs 1 through 42.

53.     Liebowitz and M.L. Management have refused to obtain required approvals for their actions, including but not limited to their decisions regarding financing and their transfer of their limited partnership interests.

13

54. Liebowitz and M.L. Management have charged and continue to threaten to charge to the Partnerships any and all legal fees and costs of this legal action against them, despite the substance of the claims against them that they are in breach of their agreements and otherwise have caused damage and harm to the Partnerships.

55. Liebowitz and M.L. Management have caused the Partnerships to refuse to make their usual distributions to the limited partners, including Marcus.

56. As a result of these actions, Liebowitz and M.L. Management are gaining an unfair and unwarranted advantage in this litigation, by obtaining a free fee ride at the expense of the Partnerships while choking off Marcus' principal means of support and source for paying his own legal expenses. Additionally, Liebowitz and M.L. Management are making business decisions without approval. If not enjoined from these actions, Marcus faces irreparable harm that cannot be remedied by an action at law.

57. The balance of harms favors Marcus, in that he is being unfairly burdened in this action brought both on his own behalf and on behalf of the Partnerships, while the general partner gains an unfair advantage, and runs the Partnerships for its own benefit..

58. The public interest will not be harmed by the requested injunction, in that it involves a purely private dispute between private parties.

WHEREFORE, Marcus seeks temporary and permanent injunctions:

A. Removing M.L. Management as general partner and management company of the Partnerships, and appointing an interim property manager with full authority to investigate and report on both past dealings by defendants as well as proper ongoing operations of the Partnerships, and surcharging defendants for mismanagement, self-dealing and violation of the Partnership agreements;

B. Appointing a new, qualified general partner and management company;

C. Preventing Liebowitz and M.L. Management from blocking the Partnerships from paying distributions to the limited partners, and ordering the Partnerships to pay all past due distributions;

D. Preventing Liebowitz and M.L. Management from paying their own legal fees and the fees of the Liebowitz Family Limited Partnership from Partnership funds, and ordering Liebowitz, M.L. Management and the Liebowitz Family Limited Partnership to return all money paid as legal fees and costs on their behalf to the Partnerships;.

E. Requiring defendants Liebowitz and M.L. Management to secure the Owners' approval as required under the management and other agreements controlling the management and operation of the Partnerships;

F. Declaring and adjudging that any and all transfers of partnership interests in Harbor Inn and Park Plaza from defendant Liebowitz to his own family partnership, defendant Liebowitz Family Limited Partnership, are void and without legal effect;

G. Ordering Liebowitz, M.L. Management and Liebowitz Family Limited Partnership to return all partnership interests to the original owner, to refile and resend all financial and tax filings from the time of improper transfer to date in order to reflect the proper owners of all partnership interests as ordered by the Court, and to enjoin and restrain defendants from treating the defendant Liebowitz Family Limited Partnership as having any partnership interest in either Harbor Inn or Park Plaza;

H. For costs and fees pursuant to Fla. Stat. § 620.166, and such further relief as the Court may deem just and equitable.

15

## FOURTH COUNT

### (Conversion)

59. Marcus repeats and incorporates the allegations of paragraphs 1 through 42.

60. Liebowitz and M.L. Management have converted assets of the Partnerships to their own use or control. As a result, Marcus and the Partnerships have been damaged and continue to be damaged.

61. The assets converted are specific sums of money, earmarked for specific purposes but converted by Liebowitz and M.L. Property Management to their own use or control. The specific funds include Partnership money paid to contractors and subcontractors for work done for Liebowitz and M.L. Property Management's officers or directors; money paid to M.L. Property Management for contract work done for the Partnerships without proper bidding and authorization; Partnership money paid for Liebowitz, M.L. Management and Liebowitz Family Limited Partnership's legal defense of this action; and Partnership money diverted from distributions to reserves.

WHEREFORE, Marcus seeks damages against Liebowitz and M.L. Management individually and on behalf of the Partnerships, for interest, costs, and attorneys' fees pursuant to Florida Stat. § 620.166.

### Fifth Count

### Accounting

62. Marcus repeats and incorporates the allegations of paragraphs 1 through 42.

63. The transaction between these parties that are the subject of this complaint are extensive and complex, and have been going on for years.

64. As a result of the breaches of contract and fiduciary duties set forth above, Marcus is entitled to an accounting.

16

65. Marcus is entitled to an accounting pursuant to the partnership agreements and Fla. Stat. § 620.134.

WHEREFORE, Marcus seeks an accounting from M.L. Property Management, Harbor Inn, and Park Plaza, plus interest, costs, and attorneys' fees pursuant to Florida Stat. § 620.166.

DATED: February 3rd, 2004

Respectfully submitted,
STEEL HECTOR & DAVIS LLP
Attorneys for Plaintiff, Paul Marcus
200 South Biscayne Boulevard, Suite 4000
Miami, FL 33131-2398
Telephone: (305) 577-2823
Telecopy: (305) 577-7001

By: _____
Philip Bloom
Florida Bar No. 006889
William K. Hill, P.A.
Florida Bar No. 747180

## VERIFICATION

I hereby verify that the facts set forth above are true and correct.

_____
Paul Marcus

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Amended Complaint was served this 3rd day of February, 2004 via facsimile and U.S. Mail on:

John Gillespie, Esq.
Gillespie Goldman Kronengold & Farmer
101 N.E. 3rd Avenue
Suite 1700
Fort Lauderdale, FL 33301

By: _____
William K. Hill, P.A.

MIA2001 261834v1

Steel Hector & Davis LLP

FEB-03-2004 12:28pm From- T-383 P.002 F-684

65. Marcus is entitled to an accounting pursuant to the partnership agreements and Fla. Stat. § 620.134.

WHEREFORE, Marcus seeks an accounting from M.L. Property Management, Harbor Inn, and Park Plaza, plus interest, costs, and attorneys' fees pursuant to Florida Stat. § 620.166.

DATED: February ___, 2004

Respectfully submitted,
STEEL HECTOR & DAVIS LLP
Attorneys for Plaintiff, Paul Marcus
200 South Biscayne Boulevard, Suite 4000
Miami, FL 33131-2398
Telephone: (305) 577-2823
Telecopy: (305) 577-7001

By:_____
Philip Bloom
Florida Bar No. 006889
William K. Hill, P.A.
Florida Bar No. 747180

**VERIFICATION**

I hereby verify that the facts set forth above are true and correct.

Paul Marcus

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Amended Complaint was served this _____ day of February, 2004 via facsimile and U.S. Mail on:

John Gillespie, Esq.
Gillespie Goldman Kronengold & Farmer
101 N.E. 3rd Avenue
Suite 1700
Fort Lauderdale, FL 33301

By:_____
William K. Hill, P.A.

17

MIA2001 261834v1

Steel Hector & Davis LLP